IN THE OREGON TAX COURT
REGULAR DIVISION

Victor M. MASSE,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4673, 4674)

Victor M. Masse, *pro se* Plaintiff (taxpayer) failed to appear for the trial.

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Decision for Defendant rendered April 21, 2005.

**HENRY C. BREITHAUPT, Judge.**

## I. INTRODUCTION

This matter comes before the court for decision following trial on consolidated cases TC 4673 and TC 4674. On November 17, 2004, the court mailed a letter to the parties confirming that a trial for both cases was set for February 1, 2005, at 9:30 a.m. Defendant Department of Revenue (the department) responded to that letter on November 22, 2004, stating that it could not prepare properly for the trial unless the court ruled on a pending motion related to the third amended complaint of the plaintiff (taxpayer). The court issued an order on the department's motion on December 22, 2004. *Masse I v. Dept. of Rev.*, 18 OTR 100 (2004). In the letter to the parties that accompanied that order, the court again notified the parties of the impending trial date. Neither party contacted the court thereafter to request that the trial be rescheduled.

■    On February 1, 2005, at 9:30 a.m. taxpayer was not present in the courtroom. The court attempted to contact taxpayer, leaving telephone messages for him to contact the court. Taxpayer never appeared for trial. At 10:55 a.m. the court was called to order. The department requested that the court not dismiss taxpayer's complaints and that a trial be held on the merits. Exercising its discretion under TCR 69 C, the court proceeded to trial without the nonappearing taxpayer. As of the date of this opinion, taxpayer has not contacted the court in any manner since early November 2004.

On February 27, 2004, the department filed a motion seeking attorney fees and damages.

## II.  FACTS

This matter involves the trial of two cases consolidated for trial but involving separate legal and factual issues pertaining to separate personal income tax years. In addition, the department has requested an award of attorney fees and damages. The facts are presented in three sections: (1) facts relevant to TC 4673, (2) facts relevant to TC 4674, and (3) facts relevant to the department's claims for attorney fees and damages. As noted, TC 4673 previously has been the subject of one order of the court in *Masse I*. The procedural history stated in that order is relevant to the discussions in this opinion and order related to TC 4673 and to attorney fees and damages, and is incorporated by reference.

### A.  *TC 4673*

After the order in *Masse I*, taxpayer continued to prosecute his claim that garnishments had been applied to his obligations to the department in an incorrect manner that adversely affected him. The court finds the following facts as to that claim.

Taxpayer did not initially file a return for the 1990 personal income tax year. On July 30, 1993, the department issued a Notice of Determination and Assessment (NODA), in which it assessed a tax liability, penalty, warrant charges, and interest. That NODA created Liability #1, in the amount

of $1,760.34, for the 1990 personal income tax year (1990 Liability #1).[1] The department applied a series of garnishment payments to 1990 Liability #1 from August 1998 to December 1998, at which time 1990 Liability #1 was paid in full.

The department issued a second NODA for the 1990 personal income tax year on November 21, 1994, based on additional income information that the department had received from the Internal Revenue Service (IRS). Based on that second NODA, the department created Liability #2 for the 1990 personal income tax year totaling $39,031.65 for tax liability, penalty, warrant charges, and interest (1990 Liability #2). From December 1998 to May 2001, the department applied a series of garnishment payments to 1990 Liability #2.

In May 2001, taxpayer filed a tax return for the 1990 personal income tax year. Based on that return, the department and taxpayer agreed that taxpayer had a tax liability of $4,717 for the 1990 personal income tax year. The department increased 1990 Liability #1 to income tax due of $4,717, plus a penalty and interest. The department then cancelled 1990 Liability #2 and transferred all garnishment payments credited to that liability to 1990 Liability #1.

Taxpayer also did not timely file a return for the 1991 personal income tax year. On August 16, 1995, the department issued a NODA to taxpayer indicating total tax, penalty, warrant charges, and interest due of $4,092.41 (1991 Liability #1). Beginning in March 1998 and continuing through April 2001, the department applied a series of garnishment payments to 1991 Liability #1.

In May 2001, taxpayer filed a tax return for the 1991 personal income tax year. Laurie Fery (Fery), an auditor for the department, audited that return and disagreed with taxpayer's calculations. As a result, Fery issued a Notice of Deficiency for $1,295, plus interest (1991 Liability #3).[2] The

---

[1] The numerical designation of liabilities follows the designation of liabilities by the department.

[2] At one point the department created a second liability for the 1991 personal income tax year (1991 Liability #2). Fery indicated that 1991 Liability #2 was mistakenly created and was subsequently cancelled. 1991 Liability #2 is not at issue in this matter.

department cancelled 1991 Liability #1 and transferred all payments that the department originally applied to 1991 Liability #1 to 1991 Liability #3. That created an overpayment with respect to 1991 Liability #3. The department applied the resulting overpayment refund from 1991 Liability #3 to 1990 Liability #1.

Thereafter, on November 13, 2002, the department and taxpayer met to discuss taxpayer's 1991 personal income tax liability. The parties agreed at that meeting to reduce taxpayer's 1991 personal income tax liability from $1,295 to $59.[3] That resulted in another overpayment associated with 1991 Liability #3. At this time, however, taxpayer had already filed his complaint as to the 1990 and 1991 personal income tax years in the Magistrate Division. The department did not, under its procedures, apply the resulting overpayment refund from 1991 Liability #3 to 1990 Liability #1 because that liability was subject to ongoing litigation in the Magistrate Division. Instead, the department paid a refund pursuant to the State Income Tax Levy Program (SITLP) in the amount of $2,601.61 to offset an outstanding liability asserted by the IRS against taxpayer.

At trial Fery testified that the department had applied a number of the garnishment payments received from taxpayer's employers to the 1991 tax liabilities instead of applying those payments to open 1990 liabilities. Fery prepared an exhibit that indicates that if the department had applied those payments to 1990 Liability #1, the refund issued to the IRS pursuant to the SITLP would have been only $2,276.80.

### B.  *TC 4674*

Taxpayer did not file a tax return for the 2001 personal income tax year. The department issued a Request-to-File Notice to taxpayer on June 20, 2003. Taxpayer did not respond to that notice. The department gathered information related to taxpayer's income from an employer of taxpayer and from the IRS. Based on that information, the department

---

[3] The record in this case demonstrates that failure or refusal to file returns can lead to assessments in excess of liability determined after communication by a taxpayer with the department.

determined that taxpayer's 2001 personal income tax liability was $4,090. Pursuant to the statutes, the department assessed a 50 percent penalty and interest on the past due amount. On September 17, 2003, the department issued a NODA for the 2001 personal income tax year to taxpayer indicating the total balance due as of that date equaled $6,576.25.

On December 15, 2003, taxpayer appealed that NODA to the Magistrate Division. In his complaint, taxpayer alleged that he "do[es] not owe the amount claimed by the D.O.R." Taxpayer requested that "the court * * * determine the correct amount." As of the date of the trial taxpayer had not filed a tax return for the 2001 personal income tax year. Taxpayer has never indicated how his tax liability should be calculated, whether in a return, his dealings with the department, or in his pleadings and representations to the court.

## C. *Attorney Fees and Damages*

As noted, taxpayer initially began both cases at issue in the Magistrate Division; however, TC 4673 was the only case that was actively litigated in that division. In the nearly two years that TC 4673 was litigated before the magistrate, taxpayer made a number of claims against the department, most of which appeared to be in the nature of tort claims, such as fraud and forgery. Taxpayer also claimed that he was entitled to relief from any obligation to pay penalties or interest on any deficiencies in tax but agreed with the department as to his tax liability. In an effort to prove the alleged tort claims, taxpayer requested, and the magistrate granted, extensive discovery.

As the discovery continued, Fery secured legal counsel from the Oregon Department of Justice. That counsel has represented the department since that time. As early as June 23, 2003, the department asserted to the magistrate that some of taxpayer's allegations were tort claims and, as such, were not within the jurisdiction of the court. The department also asserted that those tort claims, even if proved, would not provide taxpayer the form of relief he sought as to his tax claims. Despite that notification, the magistrate continued to permit discovery and eventually scheduled a trial for February 2004, one of the goals of which

was stated by the magistrate to be to "make * * * findings on the issue of Ms. Fery's credibility."

At that point the department filed a petition for special designation to the Regular Division of the case and related exhibits. In assessing that petition, the court considered a number of issues. First, the available record of the proceedings in the Magistrate Division did not clearly indicate the nature of taxpayer's claims or how any claim for relief would be related to the discovery that the magistrate had ordered. Second, a significant question existed as to the jurisdiction of the court that the magistrate had not addressed. Third, the magistrate assigned to the case had scheduled a trial for the purpose of determining the credibility of a department employee, although the connection between that credibility and any claim for relief over which the court had jurisdiction was by no means clear. Finally, and related to all of the foregoing, in one of the exhibits that the department included with its motion, the department asserted to the magistrate that the magistrate had "stated it had personal experience with the several department employees who had done the kind of thing that plaintiff alleged were done in this case."[4] Having concern about the neutrality of the magistrate involved in this matter, the basis of taxpayer's claims, the jurisdiction of this court to consider those claims, and the relevance of the extended discovery and the scheduled trial to claims that the court could hear, this division granted the department's petition for special designation. The court also ordered taxpayer to file a listing of the specific actions that he wished the court to take, with taxpayer's desired actions separately stated for each tax year covered in his complaint.

Taxpayer responded to the court's order in a letter dated February 21, 2004. The court also scheduled the first case management conference in the Regular Division (the First CMC), which was held as scheduled. At the First CMC, the court discussed taxpayer's letter dated February 21, 2004, using that letter as a listing of taxpayer's claims

---

[4] Separately, and after Special Designation, the taxpayer asserted that the magistrate hearing the case "tended to side with me on my discovery requests because he said that he knew that certain people at the D.O.R. had done this exact same thing in the past."

against the department as of that date. During the First CMC, as to the tax years and claims listed in that letter, taxpayer completely abandoned some of the claims for certain tax years and all of the claims for other tax years.

At the conclusion of the First CMC, the court summarized what it understood to be taxpayer's claims. The court instructed taxpayer to provide a statutory basis for each of his claims. Taxpayer indicated that he intended to seek the services of an attorney. The department's claim for attorney fees and damages was also discussed at the conclusion of the First CMC. The court further suggested that taxpayer discuss that issue with his attorney. On February 27, 2004, the department filed a formal motion for attorney fees and damages as to TC 4673.

Taxpayer did not secure the services of an attorney. Through the course of three amended complaints, taxpayer asserted and then changed the bases for his tax claims and continued to assert tort claims against the department. As a result, in *Masse I*, the court ordered that taxpayer's complaint in TC 4673 be stricken in part, and that the case proceed to trial on the remaining claim for reduction of penalties and interest assessed in respect of taxpayer's 1990 personal income tax year.

The court also specially designated TC 4674 and consolidated it with TC 4673. Although discussed tangentially at case management conferences and hearings related to TC 4673 held on the record, taxpayer has never submitted any evidence or made any assertions as to the claims he made in his complaint in TC 4674.

## III. ISSUES

A.   TC 4673:   Is taxpayer entitled to relief for correction of the application of garnished funds related to the 1990 and 1991 personal income tax years?

B.   TC 4674:   Did the department correctly determine taxpayer's tax liability for the 2001 personal income tax year?

C.   Is the department entitled to attorney fees?

D.   Is the department entitled to damages?

## IV.  ANALYSIS

### A.  *TC 4673:   The Application of Garnished Funds*

In his Third Amended Complaint, taxpayer alleges that the department incorrectly applied garnishment payments against his 1991 personal income tax liabilities instead of applying those payments toward his 1990 personal income tax liabilities. As a result of that alleged misapplication, taxpayer contends that he suffered certain economic damages. Taxpayer bases the allegations in his complaint on "administrative procedure #361-056, page 2 5(f), 'Payment must be applied to oldest personal garnishment account.' "

At trial, Fery testified that the administrative procedure that taxpayer relies on is merely a policy and administrative procedure (PAP) of the department. As such, the PAP is equivalent to a personnel policy that may lead to an employee of the department receiving a sanction if that employee does not act in accordance with it. The PAP is not a statute, nor is it an administrative rule.

During recorded case management conferences and hearings related to the cases consolidated in this matter, taxpayer claimed on more than one occasion that he could prove that the department's misapplication had harmed him economically. As noted, however, taxpayer did not appear at trial to offer proof of those claims.[5] Notwithstanding taxpayer's failure to offer proof that the department had misapplied the funds garnished from taxpayer's wage income, Fery conceded at trial that the department had in fact applied some of those funds to years to which those funds should not have been credited.

Fery further testified, however, that she had computed what would have resulted had the department properly applied the garnishment payments to the oldest account first in compliance with its own PAP. The department entered into evidence Fery's four-page summary of her

---

[5] Nor did taxpayer respond to court requests that he meet with the department to review his assertions as to the calculation of damages.

computation. In that summary Fery indicates that taxpayer received a net $324.81 overpayment as a result of the department's failure to follow its PAP. Even assuming that the department must act in accordance with its own PAPs and that a failure to do so might provide taxpayer a ground upon which to base his allegations, taxpayer's claim must fail because he has not shown how he was harmed.[6] Based on this record, the court concludes that taxpayer's claims as to TC 4673 are without merit.

B.  *TC 4674:  Determination of Taxpayer's 2001 Personal Income Tax Liability*

In his Third Amended Complaint, taxpayer disputes that he owes the tax liability indicated by the department on the NODA dated September 17, 2003. Taxpayer has never indicated what his actual tax liability should be for the 2001 personal income tax year, either by way of a return or in his written submissions, or in the recorded case management conferences and hearings that occurred in connection with these consolidated cases. As noted, taxpayer did not appear at trial.

Pursuant to its statutory authority to issue a NODA, the department used the best information available to it to determine taxpayer's personal income and tax liability. *See Curtis v. Dept. of Rev.*, 17 OTR 414, 420 (2004). The department entered into the record as evidence a number of documents that support and explain its issuance of the NODA for the 2001 personal income tax year. This evidence includes a W-2 from one of taxpayer's employers for the 2001 personal income tax year and a three-page IRS transcript. The totals for Oregon self-employment income and Oregon non-self-employment income that the department used in arriving at taxpayer's total personal income are substantiated by the W-2 and IRS transcript evidence.

---

[6] Payments otherwise due to taxpayer were made, in some cases, to the IRS. Those payments either paid taxpayer's obligations or, if excessive, would have been recoverable by way of a claim for refund. The direction of the payment to the IRS was not injurious, therefore, to taxpayer.

The department submitted a computer printout detailing its computation of taxpayer's Oregon tax liability based on his Oregon taxable income. In arriving at taxpayer's Oregon taxable income, the department made certain deductions and allowed credits that decreased taxpayer's total income tax liability. The printout also details the department's assessment of the statutorily mandated 50 percent penalty and an amount of interest on the unpaid tax as of June 13, 2003. That interest calculation is consistent with the interest amount calculated as of the NODA dated September 17, 2003.

Based on this record, taxpayer has not satisfied his burden of proving that the department improperly calculated his tax liability, penalty, or interest as indicated on the NODA dated September 17, 2003. The court concludes, therefore, that taxpayer's claims as to TC 4674 are without merit.

C. *Attorney Fees*

The department is the prevailing party in this case and, therefore, the court must award reasonable attorney fees to the department if the court determines that "there was no objectively reasonable basis for [taxpayer] asserting the claim * * * or ground for appeal." ORS 20.105.[7] When determining whether an award of attorney fees is required under ORS 20.105, the court assesses whether taxpayer's claims, defenses, or grounds for appeal were "entirely devoid of legal or factual support at the time [they] were made." *Patton I v. Dept. of Rev.*, 18 OTR 126 (2004) (internal citations omitted). The court makes that assessment at the time the complaint is filed and on an ongoing basis thereafter by considering "whether a reasonable [litigant] would know that each of the arguments on appeal is not well grounded in fact or is not warranted either by existing law or by a reasonable argument for the extension, modification, or reversal of existing law." *Patton II v. Dept. of Rev.*, 18 OTR 262 (2005) (internal citations omitted).

---

[7] All references to the Oregon Revised Statutes (ORS) are to the 2003 edition.

### 1. *TC 4673*

In assessing whether taxpayer is responsible for attorney fees, the court considers TC 4673 as having three distinct "phases": (1) before the First CMC; (2) from the First CMC to the time of the trial; and (3) the trial. Those phases are taken in turn.

#### a. Phase One: Up to the First CMC

The period before the First CMC was the time in which the case was pending in the Magistrate Division. To the extent that the department seeks attorney fees for that period, the court concludes that no fees should be awarded.

The department would be entitled to an award of fees if taxpayer had, during that period, no objectively reasonable basis for asserting the claim. ORS 20.105. This division of the court ultimately concluded that taxpayer failed to state claims entitling him to relief from interest and penalties. The test, however, is whether taxpayer was objectively reasonable as he proceeded through the Magistrate Division.

Although his claims were found to be without basis in fact or law, the magistrate hearing the case permitted taxpayer to pursue those claims with extensive proceedings and discovery. The magistrate never took steps necessary and appropriate to determine if the court had jurisdiction over taxpayer's claims or could award the type of relief requested by taxpayer. The magistrate did not require taxpayer to connect his requested discovery to any specific statutory basis (which he ultimately could not do) or address the teaching of *Sanok v. Grimes*, 294 Or 684, 662 P2d 693 (1983), that this court has no direct jurisdiction over tort claims.[8] Those failures occurred even though the department objected to the

---

[8] The judge and magistrates in this court have an independent obligation to ascertain whether the court has jurisdiction over a claim. *See Ahern v. OPEU*, 329 Or 428, 436, 988 P2d 364 (1999) ("In determining whether it has authority to decide a matter, a court must consider the nature of the matter, not the label that a party has placed on it."). Permitting discovery as to claims outside the jurisdiction of the court is unwarranted. Further, discovery should only be permitted when the matter involved is "relevant to the claim or defense of the party seeking discovery * * *." TCR 36 B(1). In this case, permitting discovery as to tort claims was error. The only statutes that authorize the other remedy sought by taxpayer, cancellation of interest and penalties, involve procedural facts readily available to the court, for

continued discovery, precisely because of its view that the court had no jurisdiction over tort claims and taxpayer could not bring himself within statutory relief provisions.

■■    The failures by the magistrate, although occasioned by taxpayer's claims, cannot fairly be said to be taxpayer's fault. The failures are the result of lapses by the magistrate.[9] In the face of the actions that the magistrate took or failed to take, the court cannot conclude that taxpayer was not objectively reasonable. If taxpayer was merely relying on his own subjective view of the propriety of his claims he would be exposed to an award of attorney fees and damages. Viewed objectively, however, this taxpayer, appearing *pro se*, was responding to a pattern of actions and rulings by a judicial officer; that response cannot be described as unreasonable.

b.    Phase Two: From the First CMC up to Trial

Once TC 4673 was specially designated, the court began a process of having taxpayer focus and explain his claims. In particular, the court conducted the First CMC by reviewing taxpayer's claims, as represented in his letter dated February 21, 2004, on a claim-by-claim basis. At the conclusion of the First CMC, taxpayer agreed that, as was true in the Magistrate Division, the only issues were related to his obligation to pay penalties and interest for the 1990 personal income tax year and, the method for calculating interest, and his claims for fraud and forgery.

At the First CMC, the court further ordered taxpayer to make his claims carefully and to identify statutory basis for those claims. The department stated that it might

---

purposes of ORS 305.265, or reliance by the taxpayer on misleading statement or conduct on the part of department employees for purposes of ORS 305.145 and ORS 305.880. Permitting extensive discovery to taxpayer to determine facts he did not know was error because he logically could not have relied on statements or conduct not known to him and as to which he sought discovery. The record indicates that the magistrate in this matter apparently believed that if the department had engaged in some general wrongful conduct, it should not be permitted to collect interest and penalties. No statute provides such a general remedy and the existence of specific, but limited, statutory remedies clearly show that such relief is not available. Finally, the magistrate set a proceeding to determine the credibility of a witness before determining the relevance of that person's testimony to claims that could be brought in this court. That was improper.

[9] Unfortunately, these lapses may have been, in part, the product of the magistrate permitting prior experiences to intrude upon current decision-making.

file—and in fact it did file—a motion for attorney fees and damages. When taxpayer indicated that he intended to hire an attorney, the court advised taxpayer to discuss the issue of attorney fees and damages with that attorney before proceeding and, in any event, to proceed further only with the knowledge that baseless claims could result in an award of attorney fees and damages to the department.

Taxpayer did not hire an attorney and proceeded to file several amended pleadings in which he continued to advance the same claims, although on shifting bases. As a result, the court struck portions of taxpayer's Third Amended Complaint and proceeded to trial. Having ruled in the department's favor in TC 4673, as discussed in detail above, the court has concluded that taxpayer's claims lacked an objectively reasonable basis. The court concludes, therefore, that the department may recover attorney fees in TC 4673 for the period of time from the First CMC to the time of the trial.

c. The Trial

After the trial was called to order, the department indicated that it did not want the court to dismiss the case, but requested that it be permitted to present its cases-in-chief. The court granted that request and the department presented evidence related to both cases. At the conclusion of its cases-in-chief, the department indicated that it did not intend to offer any additional evidence related to its claims for attorney fees and damages, instead preferring to rely on the record as a whole. Essentially, therefore, the department requested a trial to secure the same result that it could have obtained by requesting a default judgment.

If the department believed that it needed to conclusively establish that taxpayer's claims were without legal or factual bases through the submission of evidence at trial, that belief would be misplaced. Litigants may not attempt to extend the white flag of surrender at the eleventh hour in order to stave off an award of attorney fees and damages. Indeed, the failure to appear at trial and failure to contact the court thereafter may be seen as the ultimate signs that a party's position lacks an objectively reasonable basis. The court concludes, therefore, that the department may not recover attorney fees that it incurred at trial.

## 2. *TC 4674*

Up until trial, TC 4674 had only been discussed in case management conferences and hearings on the record designed primarily to define the issues underlying TC 4673. As discussed in detail above, the trial record establishes that taxpayer's claims were not objectively reasonable. Taxpayer made no showing of facts or law that ran counter to the department's assessments. Based on the record, therefore, the court concludes that, under ORS 20.105, the department must be awarded attorney fees for its defense of TC 4674 up to the time of trial. Consistent with its conclusions stated above, however, the court concludes that the department may not recover attorney fees that it incurred at trial.

## D. *Damages*

■      The award of damages for frivolous or groundless appeals is governed by ORS 305.437, which states:

> "(1)   Whenever it appears to the Oregon Tax Court that * * * taxpayer's position * * * is frivolous or groundless, damages in the amount not to exceed $5,000 shall be awarded to the Department of Revenue by the Oregon Tax Court in its judgment. * * *
>
> "(2)   As used in this section, a taxpayer's position is 'frivolous' if there was no objectively reasonable basis for asserting the position."

As discussed above, the court has concluded that taxpayer's claims in both TC 4673 and TC 4674 were objectively unreasonable. The court must, therefore, award damages to the department. Based on this record, therefore, the court orders that damages in the amount of $3,000 shall be awarded to the department in TC 4673 and damages in the amount of $1,000 shall be awarded to the department in TC 4674.

## V.   CONCLUSION

The court concludes that taxpayer has failed to show that he was economically harmed in TC 4673 and, therefore, may not receive any reduction in penalties or interest for the 1990 personal income tax year. The court also concludes that

taxpayer failed to show that the department improperly calculated taxpayer's tax liability, penalty, and interest for taxpayer's 2001 personal income tax year. When tested in hearing and trial, taxpayer's claims were shown to be devoid of legal or factual basis and were, therefore, not objectively reasonable. Now, therefore,

IT IS THE DECISION OF THE COURT that taxpayer was not economically harmed by the department's misapplication of garnished funds related to taxpayer's 1990 and 1991 personal income tax liabilities;

IT IS FURTHER DECIDED that the department properly determined taxpayer's personal income tax liability for the 2001 personal income tax year;

IT IS ORDERED that the department shall be awarded attorney fees in TC 4673 for the period from the February 26, 2004, case management conference up to the trial;

IT IS FURTHER ORDERED that the department shall be awarded attorney fees for TC 4674 that it incurred up to the trial; and

IT IS FURTHER ORDERED that the department shall be awarded damages in the amount of $3,000 in TC 4673 and damages in the amount of $1,000 in TC 4674.

Costs to Defendant.