382 May 7, 2019 No. 17

IN THE OREGON TAX COURT
REGULAR DIVISION

TYLER FUQUA CREATIONS, INC.,
Tyler Fuqua, and Jennifer Phipps,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant.*

(TC 5345)

Plaintiffs appealed to the Regular Division after the Magistrate Division dismissed the case for failure to sign the complaint. The Regular Division dismissed the case after Plaintiffs failed to appear at the initial case management conference. The court granted Defendant's request for an award of attorney fees, holding that, under ORS 20.105, (1) Defendant was the prevailing party, (2) Plaintiffs did not have an objectively reasonable basis for their claim because the magistrate correctly dismissed their complaint and Plaintiffs failed to pursue their appeal, and (3) after adjustment by the court, the amount of fees was reasonable under ORS 20.075.

Submitted on Defendant's Motion for Attorney Fee Award.

Tyler Fuqua, Plaintiff, filed a response *pro se.*

James C. Wallace, Senior Assistant Attorney General, Department of Justice, Salem, filed the motion for Defendant.

Decision for Defendant rendered May 7, 2019.

**ROBERT T. MANICKE, Judge.**

I. INTRODUCTION

This matter comes before the court on Defendant Department of Revenue's Motion for Attorney Fee Award and Statement for Attorney Fees for Defendant, filed January 28, 2019. Plaintiff Tyler Fuqua filed a response to the motion on March 4, 2019, and Defendant filed a reply and additional declarations on March 11 and 12, 2019.

Defendant has asked the court to order Plaintiffs to pay $1,474.20 in attorney fees that Defendant claims it incurred in defending this lawsuit. (Def's Stmt Atty Fees at 2.) State law *requires* the court to do so (1) if Defendant

is the "prevailing party" in the suit; if (2) there was "no objectively reasonable basis" for Plaintiffs' claim; and (3) to the extent that the amount of the fees is "reasonable." ORS 20.105.[1]

As to the first question, in this case there is no doubt that Defendant is the prevailing party, as the court issued a Judgment of Dismissal on January 18, 2019, dismissing the complaint that Plaintiffs had filed against Defendant.

The second question is whether Plaintiffs had an "objectively reasonable basis" for suing Defendant.

## II.   FACTS

Defendant filed a number of documents with the court; Plaintiffs did not comment on any of them. From these documents, the court constructs the following chronology of facts:

(1)   Plaintiffs filed a complaint in the Magistrate Division, to which the court assigned case number TC-MD 180292G.

(2)   In the Magistrate Division, on August 21, 2018, Defendant filed its Motion to Dismiss Plaintiffs' complaint, stating:

"The Plaintiff is appealing an audit from the Oregon Department of Employment, not the Oregon Department of Revenue. Plaintiff has filed a case with the Magistrate Division in error and should have filed a claim with the Department of Employment's Administrative Hearings Division. In support of this motion, defendant relies on the following points an authorities. ***

"I.   Facts

"Defendant, Department of Revenue, does not have a balance on the Plaintiff's account. Defendant has not audited the Plaintiffs returns. The Plaintiff underwent an audit with the Department of Employment.

"II.   No grounds for appeal

"An appeal to the Magistrate Division of the Oregon Tax Court should have merit follows an audit or adjustment

---

[1] Unless otherwise noted, the court's references to the Oregon Revised Statutes (ORS) are to 2017.

from the Department of Revenue, not the Department of Employment.

"III.    Conclusion

"*The Department of Employment handles their own cases in-house. The Plaintiff should contact the Administrative Hearings Division, specifically Sarah Wolfe, at (503) 947-1523.* Therefore, this court should grant defendant's motion and dismiss the complaint."

(Emphasis added.)

(3)    After Defendant moved to dismiss Plaintiffs' complaint, the magistrate issued an order "notifying Plaintiffs that their Complaint did not bear the signature of an authorized representative and so was 'not signed' and subject to dismissal pursuant to Tax Court Rule 17 B." The court's order gave Plaintiffs a deadline to correct the problem. Plaintiffs did not file a response to the court's order, nor did they respond to Defendant's motion to dismiss. On October 1, 2018, the Magistrate Division issued a "Final Decision of Dismissal" dismissing Plaintiffs' complaint because Plaintiffs had "abandoned" their appeal.

(4)    On October 15, 2018, Defendant's representative who had signed the motion to dismiss, Nichol Schauer, received a copy of a letter from Plaintiffs asking the magistrate to not dismiss the case for lack of signature on the complaint. Schauer's notes state: "Tried to contact Plaintiff but got voicemail. *Left a message telling him his appeal to Magistrate is moot that he needs to appeal to DOE.*" Later that day, Plaintiff Tyler Fuqua returned Schauer's call.[2] Schauer's notes state: "*Discussed the fact that his appeal is not necessary and that he should be appealing to DOE Administrative Hearings Division.* Tp asked if I could send him the information in an email to [email address redacted]. *Sent email explaining the same thing and giving him Sarah Wolfe's number to file an appeal.*" (Emphases added.)

(5)    On October 18, 2018, Plaintiffs filed their complaint in the Regular Division. Their sole allegation of error

---

[2] Schauer's notes indicate conversations with "tp" or "Plaintiff." The court infers that the calls were with Tyler Fuqua, as Schauer's notes refer to the person on the call as "he."

was: "[D]ue to lack of communication with my tax accountant, we missed a signature on one form." Plaintiffs Tyler Fuqua and Jennifer Phipps signed the complaint.

(6)   On October 23, 2018, Schauer called Tyler Fuqua after receiving a copy of the complaint filed in the Regular Division. Schauer's notes state: "He stated that we audited him and that his tax preparer was filing an appeal. *Advised him he should be appealing with DOE not DOR as the audit was performed by them. Gave him the Administrative Hearings Division contact Sarah Wolfe and her phone number.* Suggested he give her a call to discuss." (Emphasis added.)

(7)   On November 14, 2018, Defendant filed an Answer in the Regular Division, which was only served, in error, on Plaintiffs' purported Magistrate Division representative Stacey Creighton, of Portland, Oregon. Defendant's Answer stated, as an affirmative defense: "Plaintiffs are not aggrieved by the Defendant and, therefore, have no standing to appeal to the Oregon Tax Court. Defendant has not audited and adjusted any of Plaintiffs' tax returns or denied Plaintiffs a request for a refund. To the best of Defendant's knowledge, Tyler Fuqua Creations, Inc. may have been audited by the Oregon Department of Employment." Court staff notified Defendant's counsel that Plaintiffs had filed their complaint as *pro se* litigants.

(8)   On November 15, 2018, Defendant filed a second, correctly served Answer in the Regular Division matter.

(9)   On November 19, 2018, the Regular Division sent notices to all parties, scheduling an initial case management conference (CMC) for December 19, 2018. The notices stated: "THIS IS AN IN-PERSON HEARING" and provided directions to the courtroom. The court set the conference as an in-person hearing in an effort to clarify apparent confusion in the case. *Fuqua, et al. v. Dept. of Rev.*, TC 5345 (Dec 20, 2018) (slip op at 1). The notices stated further: "IF YOU DO NOT APPEAR, YOUR CASE MAY BE DISMISSED OR A DECISION MAY BE ENTERED AGAINST YOU." (Uppercase in original.)

(10)   Creighton sent a letter dated November 20, 2018, that purports to be addressed to the Department of Justice, the Regular Division and the Magistrate Division.

The following appears beneath Creighton's signature: "EA 124068, LTC 35263-C."

     a.   The November 20, 2018, letter identifies Plaintiffs as Creighton's "clients" and purports to respond to Defendant's Answer in this case.

     b.   Among other statements, Creighton declares: "Please note that the Oregon Employment Department is a department within the Oregon Department of Revenue."

     c.   The letter states that "OED made changes to the taxpayers' payroll tax assessments, which had an effect on the taxpayers' business and individual tax returns, an area that falls within the jurisdiction of the Oregon Department of Revenue. *** I am requesting that the Oregon Tax Court advise the Oregon Department of Revenue to take extreme caution with this case."

     d.   The letter concludes: "While I would typically request that this case be referred to Oregon Complex Litigation Court, I have serious doubts about the Court's qualifications to consider the case. None of the individuals who serve the Oregon Complex Litigation Court have the collective credentials required to make decisions about tax cases in the State of Oregon as required by the Oregon Board of Tax Professionals and the Internal Revenue Service."

     (11)   On November 29, 2018, Creighton participated in a telephone hearing before administrative law judge Ehren Vaughn in the Office of Administrative Hearings. Defendant submitted a three-page document that purports to be Creighton's notes of that hearing. The notes show that Tyler Fuqua also participated in the hearing. The notes state in part: "I also stated that I don't understand why the case was referred to OAH to be heard by an Administrative Judge. I stated that Mr. Vaughn likely doesn't have the authority to make decisions with regard tax cases. *** I interpreted Sarah's comment to indicate that the taxpayer does not have appeal rights before the Oregon Tax Court. Sarah confirmed, stating that this taxpayer has no appeal rights before the Oregon Tax Court."

(12)    Creighton sent a second letter dated December 3, 2018, naming the same addressees. The December 3, 2018, letter states in part:

"Despite my letter to the Oregon Tax Court dated 11/14/18, which advised of malicious and illegal behavior by ODR and OED, those Organizations were allowed to proceed with their pursuit of my client. Because the Court has demonstrated that it cannot apply and protect the law in a fair and impartial manner, I am requesting that the Oregon Tax Court immediately remove itself from service.

"In an effort to protect consumers from incompetent and unethical activities, complaints have been filed with Oregon Board of Tax Practitioners against all of the following individuals:"

(13)    There follows a list of individuals, by name, including the Oregon Attorney General and a magistrate in this court, as well as individuals in the Office of Administrative Hearings, Defendant, and the Employment Department, among others. The letter "recommend[s]" that the court "cancel the additional tax and interest that was assessed by the OED on 5/14/18," refund the court's filing fee and "release any lien that may have been filed and entered against the taxpayer."

(14)    Plaintiff Tyler Fuqua called the court on December 13, 2018, regarding the upcoming CMC. Court staff confirmed the conference would be held in person at the date and time stated in the notice. *Fuqua, et al. v. Dept. of Rev.*, TC 5345 (Dec 20, 2018) (slip op at 1).

(15)    At the CMC on December 19, 2018, the attorney for Defendant appeared. No one appeared on behalf of Plaintiffs. Court staff called, left a voicemail message, and sent a text message to Tyler Fuqua at the number he had provided to the court, asking if he was going to attend the CMC. Fuqua returned a text message that stated: "Hi there, unfortunately I am not. I sent an email yesterday regarding this but I guess I didn't sent it to the right place. Sorry about that. I'm not in the business of wasting peoples time." Fuqua also left a voicemail message on the court's main line, in response to the court's messages, that also stated that he would not attend the CMC.

## III.   ANALYSIS

Based on these findings, the court now considers whether Plaintiffs' claim in this division of the court was objectively unreasonable. The court's first task is to identify the relevant "claim," the reasonableness of which is at issue. In all aspects of its decision-making under ORS 20.105, the Regular Division considers only the record before it, which includes documents from Magistrate Division proceedings or other prior proceedings only to the extent that a party places those documents into the record in the Regular Division. *See* ORS 305.425(1); *Patton II v. Dept. of Rev.*, 18 OTR 256, 261 & n 7 (2005).

Here, Plaintiffs' complaint filed in this division states only: "[D]ue to lack of communication with my tax accountant, we missed a signature on one form." When read together with the magistrate's Final Decision of Dismissal, the court concludes that the only claim Plaintiffs have articulated in this division is that the magistrate erred by dismissing their case because no valid signature appeared on the complaint they filed in the Magistrate Division. The exact nature of the signature defect in the Magistrate Division complaint is unclear because neither party introduced that complaint into evidence in this division.[3] What is clear is that the magistrate ordered Plaintiffs to correct the defect by a certain deadline, and Plaintiffs failed to do so. Plaintiffs also did not respond to Defendant's Motion to Dismiss in the Magistrate Division. Both failures led the magistrate to observe that Plaintiffs had abandoned their appeal, but the failure to correct the signature defect by the date ordered was, by itself, sufficient grounds for dismissal. *See former* Tax Court Rule (TCR) 17 B (2018).

This court's prior opinions make clear that, when the Magistrate Division dismisses a plaintiff's claim for failure to pursue it, and the plaintiff then appeals, the Regular Division will determine anew and independently whether

---

[3] Three logical possibilities include: (1) no Plaintiff signed the Magistrate Division complaint; (2) fewer than all Plaintiffs signed; (3) a person, other than an attorney, claiming to represent one or more Plaintiffs signed the Magistrate Division complaint but failed to also file an authorization signed by Plaintiffs; or (4) some combination of possibilities (1) through (3). *See* ORS 305.230(3).

the magistrate's decision was correct. *Norpac Foods, Inc. v. Dept. of Rev.*, 15 OTR 331, 334 (2001). That is what Plaintiffs in this case asked the Regular Division to do when they filed their complaint in this division. Setting aside momentarily the fact that Plaintiffs then proceeded to abandon *this* appeal as well, by ignoring the court in much the same manner as they had in the Magistrate Division, the court's case law indicates that, if the Regular Division had decided the procedural issue of the magistrate's dismissal in Plaintiffs' favor, the Regular Division then would have proceeded to hear Plaintiffs' substantive claims *de novo. See Spears v. Dept. of Rev.*, 20 OTR 229 (2010).

The court concludes, therefore, that the "claim" whose reasonableness must be tested for purposes of ORS 20.105 has two parts: (1) Plaintiffs' claim to overturn the magistrate's dismissal for failure to pursue the appeal; and (2) Plaintiffs' substantive claim or claims against Defendant.

A.  *Plaintiffs' Regular Division Claim, Part One: Dismissal from Magistrate Division*

As to the first part of Plaintiffs' claim, the court concludes that the magistrate's decision to dismiss the complaint was entirely correct. The magistrate cited TCR 17 B, which at that time stated: "If a pleading, motion, or other paper is not signed, it will be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant." *Former* TCR 17 B (2018). Plaintiffs filed a lawsuit, made a mistake in doing so, were told about the mistake and directed to fix it, but apparently did not bother to interact with the court. The magistrate correctly did not reach the merits of Defendant's Motion to Dismiss, except to note Plaintiffs' lack of response.

Against that backdrop, the court now examines whether the first part of Plaintiffs' claim in this division was objectively reasonable. In this division, Plaintiffs sought relief from the magistrate's dismissal by filing their complaint on October 18, 2018, alleging that "lack of communication with [Plaintiffs'] tax accountant" had caused them to "miss[] a signature on one form." However, Plaintiffs' allegation ignores the fact that they not only "missed" the

signature on the complaint,[4] they also failed to even respond to, much less comply with, the magistrate's specific order to address the problem. The allegation also ignores the fact that the law squarely places responsibility directly on a taxpayer as principal to manage the relationship with a taxpayer's representative. ORS 305.230(3) provides: "A taxpayer represented by someone other than an attorney is bound by all things done by the authorized representative, and may not thereafter claim any proceeding was legally defective because the taxpayer was not represented by an attorney." The court takes judicial notice that this statute was reprinted on the face of the authorization form that a plaintiff must sign in order to be represented by someone other than an attorney.

But even if the court overlooks Plaintiffs' failure, in their complaint in this division, to acknowledge their conduct that had led to dismissal in the Magistrate Division and to state any ultimate fact justifying relief in this division, Plaintiffs' failure—without notice[5]—to appear for their only scheduled hearing in this division stripped their claim of any vestige of reasonableness. A reasonable plaintiff

---

[4] The court's signature requirements are not mere formalities but serve important functions, as this case illustrates. First, the requirement to sign any document filed with the court compels the signer to promise that he or she is proceeding in good faith. *See* TCR 17 C(2) ("A party or attorney certifies that the pleading, motion, or other document is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."). The rules allow the court to enforce a signer's promise by ordering monetary or other sanctions. *See* TCR 17 D. For this reason, the court's rules allowed it to "strike" (delete or ignore) an unsigned document, as the magistrate did here. Second, the requirement that a taxpayer who wants to be represented by someone other than a lawyer in the Magistrate Division sign the court's form of authorization for that representative ensures that *both* the taxpayer and the representative know who is responsible to speak for the taxpayer, presumably reducing miscommunications between them. *See* Tax Court Rule-Magistrate Division (TCR-MD) 1 A(1)(a) (referring to "signed written complaint"); TCR-MD 1 D (referring to "signed Authorization to Represent form"); TCR-MD 1 E(3)(a) ("A document is not signed unless it bears the signature of an authorized representative."); *see also* TCR-MD Preface ("If circumstances arise that are not covered by a Magistrate Division rule, the rules of the Regular Division may be used as a guide to the extent relevant.").

[5] The court gives no weight to Tyler Fuqua's statement via text message, after the hearing, that he had attempted to notify court staff the day before the hearing that he did not intend to attend. He offered no proof that he had attempted to send such a message, and even if his statement is accurate he acknowledged that he used the wrong address and did not attempt to correct his error.

would have learned from the experience in the Magistrate Division that failure to respond to the court would bring about adverse consequences. A reasonable plaintiff would heed the statement on the notice of the CMC that states: "IF YOU DO NOT APPEAR, YOUR CASE MAY BE DISMISSED OR A DECISION MAY BE ENTERED AGAINST YOU." (Uppercase in original.) Yet Plaintiffs repeated their behavior when they failed to appear for their CMC on December 19, 2018, despite having called court staff about the conference a week before. Plaintiffs essentially started a car, put it in gear, set it rolling downhill, and then decided, without telling anyone, to bail out. Having done so, they must live with the collateral consequences.

Plaintiffs' conduct in this case is similar to that of the plaintiff in *Masse II v. Dept. of Rev.*, 18 OTR 240 (2005). There, a self-represented taxpayer filed two complaints in the Magistrate Division in response to personal income tax assessments. One complaint involved tax years 1990 and 1991 (TC 4673), and the taxpayer actively litigated that case for a time in the Magistrate Division. The second complaint involved income tax year 2001 (TC 4674). The taxpayer's sole allegation in TC 4674 was that he "d[id] not owe the amount claimed by the D.O.R." *Masse II*, 18 OTR at 245. He asked that the court determine the correct amount, but he submitted no evidence of the amount he thought he owed, and he made no assertions about the case in the Magistrate Division.

The Regular Division took jurisdiction over both cases pursuant to ORS 305.501(1) and consolidated them for purposes of case management conferences and trial. Although the taxpayer continued to litigate his claims in TC 4673 in the Regular Division, he submitted no evidence and made no assertions about TC 4674 during joint case management conferences at which TC 4674 was discussed tangentially. Ultimately, despite multiple notices, the taxpayer failed to appear for trial in the consolidated cases. Defendant sought attorney fees pursuant to ORS 20.105, and the court considered each of the two cases separately. In TC 4674, the court held that "the trial record establishes that taxpayer's claims were not objectively reasonable. Taxpayer made no showing of facts or law that ran counter to the department's

assessments." *Masse II*, 18 OTR at 254. The court ordered the taxpayer to reimburse a portion of Defendant's attorney fees to the extent reasonable and attributable to TC 4674. Like the taxpayer in *Masse*, Plaintiffs here chose not to take predicate steps necessary to put on their case, even when ordered to do so. Their claim to be relieved of the consequences was objectively unreasonable.

B.   *Plaintiffs' Regular Division Claim, Part Two: Plaintiffs' Substantive Claim Against Defendant*

        As to the second part of Plaintiffs' claim, Plaintiffs have prevented the court from considering it.[6] By failing to attend the initial CMC, and thereafter declaring that they had no intention of attending, they "fail[ed] *** to prosecute" their case, causing the court to dismiss their appeal on its own motion pursuant to TCR 54 B(1). At least in theory, a finding that Plaintiffs' underlying claim included even one reasonable argument might have prevented the court from awarding attorney fees. *See Patton II v. Dept. of Rev.*, 18 OTR 256, 263 (2005) ("[T]he court will not award attorney fees in any situation in which the nonprevailing taxpayer has advanced, throughout the proceedings, at least one objectively reasonable claim, defense, or ground for appeal."). The court concludes that Plaintiffs' claim was, in both parts and on the whole, objectively unreasonable.

C.   *Amount of Attorney Fees*

        In setting the amount of attorney fees to award, ORS 20.075(2) requires the court to consider the following two sets of factors:

        *Factors under ORS 20.075(1):*

    "(a)   The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

    "(b)   The objective reasonableness of the claims and defenses asserted by the parties.

---

[6] The court also cannot articulate Plaintiffs' substantive claim against Defendant because, as noted earlier, neither party has placed Plaintiffs' Magistrate Division complaint in the record in this division.

"(c)   The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

"(d)   The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

"(e)   The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

"(f)   The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

"(g)   The amount that the court has awarded as a prevailing party fee under ORS 20.190.

"(h)   Such other factors as the court may consider appropriate under the circumstances of the case."

*Factors under ORS 20.075(2):*

"(a)   The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

"(b)   The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

"(c)   The fee customarily charged in the locality for similar legal services.

"(d)   The amount involved in the controversy and the results obtained.

"(e)   The time limitations imposed by the client or the circumstances of the case.

"(f)   The nature and length of the attorney's professional relationship with the client.

"(g)   The experience, reputation and ability of the attorney performing the services.

"(h)   Whether the fee of the attorney is fixed or contingent."

The factors under ORS 20.075(1) relate generally to the parties' conduct and the potential deterrent effect of an award. Regarding paragraph (a), the limited information in the record is that Defendant did literally nothing to bring about Plaintiffs' two lawsuits. Defendant asserted in its Answers in both divisions of this court that it had not audited or assessed Plaintiffs, and there is no evidence that it had any contact with Plaintiffs before they sued. Regarding paragraph (b), Defendant's defenses were that the court lacks jurisdiction because Plaintiffs were assessed by the Employment Department, not Defendant. The court concludes that these defenses were objectively reasonable, while Plaintiffs' claim to have this division of the court hear their case despite their failure to comply and communicate with the magistrate was not objectively reasonable.

Regarding the deterrence factors in paragraphs (c) and (d) of ORS 20.075(1), the court emphasizes that its award of attorney fees is due to serial failures by Plaintiffs, namely, (1) Plaintiffs' failure to comply with the magistrate's order to correct the signature deficiency in their complaint; (2) their failure to communicate with the Magistrate Division; and (3) their decision, without notice, to intentionally not appear for their CMC in this division of the court. By that conduct, Plaintiffs have failed to put forward any evidence supporting their case and have rendered any claims objectively unreasonable. Plaintiffs who do not replicate that behavior and who proceed in good faith should not be deterred by this fee award. On the other hand, any plaintiffs who file an appeal in the Magistrate Division, abandon that initial appeal, then appeal to the Regular Division and intentionally abandon *that* appeal, should be on notice that they may be required to pay the reasonable attorney fees of the party they have sued. The court emphasizes further that Defendant has requested attorney fees only to the extent incurred in defending the appeal to the Regular Division.

Paragraph (e) of ORS 20.075(1) directs the court to consider the parties' conduct during the proceedings, specifically, their objective reasonableness and their diligence. The court first considers the conduct of Defendant. On this record, the court finds that Defendant's conduct was entirely

reasonable and diligent, indeed helpful. First, Defendant affirmatively alleged in both initial pleadings (the Answers) that it had not assessed Plaintiffs but that the Employment Department apparently had issued an assessment. Second, Defendant's representative on multiple occasions spoke to and emailed Plaintiff Tyler Fuqua in an attempt to redirect Plaintiffs to the Employment Department, which clearly *did* audit and assess Plaintiffs, according to the notes that Stacey Creighton took of the Employment Department administrative conference that Fuqua attended on November 29, 2018. In fact, Defendant went out of its way on more than one occasion to ensure that Plaintiffs had the name and telephone number of a particular individual at the Employment Department who, based on Creighton's notes, clearly did have specific knowledge of Plaintiffs' assessment by the Employment Department.

The court next considers Plaintiffs' conduct and will not belabor the facts recounted above. As additional facts, Defendant has placed in the record two letters from Stacey Creighton and her set of hearing notes. Although Creighton describes her relationship with Plaintiffs as that of representative and client, and Plaintiff Tyler Fuqua at times referred to his "tax accountant" or "tax preparer," the court has no record indicating that Plaintiffs authorized her to represent them in the Magistrate Division as required, nor does she appear to be an Oregon attorney allowed to represent Plaintiffs in either division of the court. The court therefore does not attribute Creighton's statements to Plaintiffs and assigns no weight to the statements for purposes of determining the amount of attorney fees to award.

For the benefit of future litigants, however, the court observes that some of Creighton's statements in the record are objectively unreasonable. The court fully understands that a *taxpayer* might be confused about the respective roles and administrative appeals procedures of the Department of Revenue and the Employment Department in administering Oregon's multiple employment taxes, not to mention the scope of the Tax Court's independent jurisdiction as a part of the judicial branch. Indeed, publicly available decisions in the Magistrate Division indicate that taxpayers occasionally

bring disputes in this court involving assessments by the Employment Department of unemployment insurance tax, only to discover that this court lacks jurisdiction to hear the dispute. *E.g.*, *Danielson Contractors Inc. v. Dept. of Rev. and Employment Dept.*, TC-MD 091470C, WL 11020 at *1 (Or Tax M Div, Jan 4, 2011). However, Creighton's assertion, as a purported representative, that "the Oregon Employment Department is a department within the Oregon Department of Revenue," and her comments about "typically" referring matters such as Plaintiffs' case to the "Complex Litigation Court" suggest a lack of understanding of the structure of Oregon government and of the tax appeals process that the court finds disturbing. Her statement that she filed "complaints" with the Board of Tax Practitioners against the Oregon Attorney General, a magistrate in this court, and eight other public officials, and her request "that the Oregon Tax Court immediately remove itself from service," are not rational, let alone reasonable. If the court were to attribute these statements to Plaintiffs pursuant to ORS 305.230(3), they would weigh heavily against Plaintiffs' effort to defend against imposition of attorney fees.

The court considers paragraphs (f) and (g) of ORS 20.075(1) inapplicable in this case. Nothing in the record indicates that settlement was or should have been discussed. Defendant has not requested a prevailing party fee.

As an additional factor or factors under paragraph (h) of ORS 20.075(1), the court considers Plaintiffs' March 4, 2019, response to Defendant's motion. Plaintiffs "ask for leniency" and for dismissal of attorney fees on the grounds that Plaintiffs experienced "bad advice and lack of communication." Plaintiffs note that they have severed their relationship with their tax preparer and hired a new one "so that everything from here on out is done correctly and that I am paying the right amount in taxes." Plaintiffs explain that they cannot afford the additional "financial hit" of paying Defendant's attorney fees. Finally, Plaintiffs assert that their tax preparer charged "almost $6000 in fees to fight a $3500 audit judgement," and that they never would have approved the preparer's starting the appeal if they had known that the fees would exceed the amount at issue. Plaintiffs have

made their frustration clear to the court, and the court has no desire to impose financial hardship on Plaintiffs or their business. However, the Tax Court has no jurisdiction to adjudicate the quality of advice Plaintiffs may have received, nor does the court have any evidence of hardship beyond Plaintiffs' bare statement. The record indicates that Tyler Fuqua and Jennifer Phipps signed the complaint in this division themselves. The court commends taxpayers' desire to ensure that they meet all future tax obligations, but the court is bound by a statute that *requires* the court to award fees based on the facts of this case, and Plaintiffs' March 4, 2019, response is insufficient to change the court's view of the amount to award.

Turning to the factors under ORS 20.075(2), the court observes that these factors generally relate to the reasonableness of the particular fee amount according to various metrics and comparisons. Because Plaintiffs have not contested the amount, except for their general request for leniency, the court focuses on the time required in the proceeding and Defendant's arguments.[7] The court sees nothing of note in Defendant's itemized time entries, with one exception: Defendant's motion states that "the fees charged by the Department of Justice in this case do not include Counsel's work in preparing this motion of the statement of fees." Yet the itemization includes two entries in early January 2019 for a total of 3.1 hours, with the following narrative: "Emails from DOR requesting atty fee application, tele conf w/ Rocco, emails re atty fee requests, and prep of jdmt of dismissal and atty fee request; Prep of jdmt of dismissal and app for atty fees." The total amount of attorney fees ($1,474.20) is the same on both the itemization and in the statement that accompanied the formal request in the department's motion. The form of judgment of dismissal that Defendant submitted to the court consisted of three sentences on one page, while the motion for attorney fees, three witness

---

[7] Counsel for Defendant asserted that the rate charged for each attorney in this matter was $182 per hour, and that that rate was legislatively approved. The court observes that the rate is significantly less than the 25th percentile rate for the Tri-County area in 2016. *See* Oregon State Bar economic survey at https://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf (accessed Apr 30, 2019).

declarations and supporting documents comprise numerous pages. Without deciding whether a fee award could include the cost of preparing an application for a fee award, consistent with Defendant's motion the court reduces the amount of the award in this case by $564.20 (3.1 hours × $182), leaving a total fee award of $910.00.

## IV. CONCLUSION

After reviewing the motion and response, as well as additional documents placed in the record, and being fully advised of the premises, the court finds that such request should be granted in part and denied in part. Now, therefore,

IT IS ORDERED that Defendant's Motion for Attorney Fee Award is granted to the extent of $910.00. Counsel for Defendant is directed to submit a form of supplemental judgment.